**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America,    )<br>                                            )<br>            Plaintiff,               )<br>                                            )<br>vs.                                     )<br>                                            )<br>Oleh Rotyslaw Stowbunenko- )<br>Saitschenko,                     )<br>                                            )<br>            Defendant.           )<br>_____)  | CR 06-0869-PHX-DGC<br><br>**ORDER** |

Defendant Oleh Rotyslaw Stowbunenko-Saitschenko is charged with bringing illegal aliens into the United States in violation of 8 U.S.C. § 1324(a)(2), encouraging illegal aliens to enter the United States in violation of 8 U.S.C. § 1324(a)(1), and bulk cash smuggling in violation of 31 U.S.C. §§ 5316 and 5332. Dkt. #66; see Dkt. #22. Defendant is represented by counsel, but has filed a *pro se* motion for "summary judgment." Dkt. #64. The Government has filed a response to the motion, Dkt. #56, and Defendant has filed a reply. For the reasons set forth below, the Court will deny the motion.[1]

---

[1] Defendant's motion was hand-delivered to the Court before March 9, 2007, and was electronically filed at the Court's direction on March 14, 2007. On March 19, 2007, the Clerk issued a deficiency notice indicating that the personal identifiers in Defendant's motion needed to be excluded or partially redacted and requiring Defendant to re-file a corrected motion. Dkt. #68. Defendant hand-delivered a copy of his reply to the Court on March 19, 2007. As of the time of this order, the corrected motion and reply have not been filed. Because trial is imminent, the Court will address the arguments in these documents as though they had been properly filed.

## I. Background.

Defendant was born in Hanover, Germany in 1940, and became a naturalized citizen of the United States in 1972. Defendant asserts that he thereafter became a member of an Indian tribe known as the Pembina Nation Little Shell Band of North America ("Pembina Tribe"). The Pembina Tribe is located in North Dakota and apparently claims rights to land in North Dakota, Minnesota, and Canada. The Tribe has not been formally recognized by the United States. *See Delorme v. United States*, 354 F.3d 810, 814 n. 6 (8th Cir. 2004).

The Government charges that Defendant assisted Apolonia Silva-Sandoval and Adelelmo Carrillo-Hidalgo in attempting to enter the United States illegally. Silva-Sandoval and Carrillo-Hidalgo are citizens of Mexico who were in the United States as undocumented aliens. Defendant allegedly obtained Pembina Tribe documents for Silva-Sandoval and Carrillo-Hidalgo after convincing them that the documents would enable them to visit family in Mexico and return to the United States. Defendant was arrested when he, Silva-Sandoval, and Carrillo-Hidalgo attempted to use Pembina Tribe documents to enter the United States through the San Luiz, Arizona Port of Entry. Defendant was also found to be carrying more than $41,000 in cash.

## II. Defendant's Motion.

### A. Jurisdiction.

Defendant asserts that the Court lacks jurisdiction because his membership in the Pembina Tribe renders him a "Sovereign Citizen." Citing a Treaty of 1863, Defendant claims that members of the Pembina Tribe "have rights that no other Indian tribe has because they never ceded to the Federal Government any of their natural, inalienable and absolute rights, including the right of free and unencumbered border crosssings, be it Canada or Mexico." Dkt. #64 at 3. Defendant asserts that "[i]t is the absolute obligation of this Court to dismiss all charges by affirming Indian statutes." *Id*. at 9, ¶ 1.

The fact that Defendant has become a member of the Pembina Tribe does not immunize him from the criminal laws of the United States or place him outside the jurisdiction of this Court for federal crimes committed in the District of Arizona. Being a

1  citizen of a sovereign nation other than the United States does not relieve one of criminal
2  liability for illegal acts committed in the United States.  The Government frequently
3  prosecutes citizens of other nations for border crimes such as drug smuggling, cash
4  smuggling, alien smuggling, or other immigration-related offenses.  Thus, even if the Court
5  were to accept Defendant's assertion that he is a member of a sovereign nation, that fact
6  would not relieve him of criminal liability for violations of United States law committed
7  within the Court's jurisdiction.  Any tribal sovereignty belonging to the Pembina Tribe
8  simply "does not extend to shield [Defendant] from the legal consequences of [his] own
9  private off-reservation activities."  *Richmond v. Wampanoag Tribal Court Cases*, 431 F.
10 Supp. 2d 1159, 1178 (D. Utah 2006).

11 Regardless of his citizenship or tribal membership, Defendant voluntary subjected
12 himself to the laws of the United States when he presented himself for inspection at the San
13 Luiz, Arizona Port of Entry.  *See United States v. Beitia-Garcia*, 79 F. Supp. 36 (D.P.R.
14 1991) (holding that the defendant had subjected herself to federal law because she voluntarily
15 chose to enter the United States) (citing *United States v. McKenzie*, 818 F.2d 115 (1st Cir.
16 1987)); *see also Marine Cooks & Stewards v. Panama Steamship Co.*, 362 U.S. 365, 372
17 (1960) ("[A] ship that voluntarily enters the territorial limits of this country subjects itself to
18 our laws and jurisdiction as they exist.").

19 Federal courts uniformly have rejected the suggestion that membership in another
20 sovereign nation relieves one of criminal liability.  *See, e.g., United States v. Jagim*, 978 F.2d
21 1032, 1036 (8th Cir. 1992) (finding "completely without merit" and "patently frivolous" the
22 defendant's argument that he could not be punished under the laws of the United States
23 because he was a "sovereign citizen" of the "Republic of Idaho"); *United States v. Hilgeford*,
24 7 F.3d 1340, 1342 (7th Cir. 1993) ("The defendant in this case apparently holds a sincere
25 belief that he is a citizen of the mythical 'Indiana State Republic' and for that reason is an
26 alien beyond the jurisdictional reach of the federal courts.  This belief, of course, in
27 incorrect.") (citing *Jagim*); *Richmond*, 431 F. Supp. 2d at 1163 ("Simply labeling one's self
28 as a 'Sovereign Citizen' does not immunize a person from the jurisdiction or processes of the

1   . . . federal courts."); *see also Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005) (finding
2   "patently frivolous" the plaintiff's "requests for declarations that laws passed by Congress
3   [did] not apply to [him] as a 'sovereign citizen of the Union of the State of Texas'").

4   Defendant bases his argument on an 1863 Treaty entered between the Pembina Tribe
5   and the United States. Defendant attached a copy of the Treaty to his motion, and the Court
6   has reviewed it carefully. The Treaty says nothing about the ability of tribal members to
7   cross the borders of the United States freely and without compliance with United States law.
8   Article 4 of the Treaty does state that members of the Tribe "shall not be held liable to
9   punishment for past offences," but nothing in the Treaty suggests that tribal members are
10  immune from liability for post-Treaty crimes committed off the reservation.

11  Defendant's motion relies heavily upon *Yick Wo v. Hopkins*, 118 U.S. 356 (1886).
12  The Supreme Court held in *Yick Wo* that the Fourteenth Amendment prohibited the
13  discriminatory application of a San Francisco laundry ordinance to persons of Chinese
14  decent. In doing so, the Court extended the protections of the Fourteenth Amendment to
15  resident aliens. The Court did not hold that resident aliens were immune from the criminal
16  laws of the United States, but rather that they, like citizens, are protected by the Constitution
17  from racial discrimination. Defendant does not contend that he has been the victim of
18  discrimination or that the border laws of the United States are applied to members of the
19  Pembina Tribe in a manner different from their application to persons of other nationalities.
20  *Yick Wo* therefore does not support Defendant's motion to dismiss the charges against him.

21  Defendant's reply memorandum argues that the Court is obligated to honor the 1863
22  Treaty, that Article 1 of the Treaty states that it is "perpetual," and that the Pembina Tribe
23  has retained all of its sovereign powers because it never surrendered them to the United
24  States. As noted above, the Treaty, even if perpetual, does not exempt Pembina Tribe
25  members from U.S. immigration laws or relieve them of liability for crimes committed at the
26  border, nor does the alleged sovereignty of the Pembina Tribe have such an effect.

27  The Court concludes that it has jurisdiction over Defendant and the subject matter of
28  this case. Defendant's motion to dismiss the charges against him will therefore be denied.

**B.  Other Issues.**

Defendant seeks various remedies. Dkt. #64 at 9-11. The Court will address them briefly.

Defendant seeks to have the "U.S. Attorney withdraw due to improprieties in presenting this case[.]" *Id*. at 9, ¶ 2. Defendant fails to identify any improprieties, let alone conduct that would require the withdrawal of Government counsel.

Defendant contends that dismissal is required "due to lack of rebuttal within 30 days of receipt of Notarized Affidavits . . . that are part of this case [and] must be taken as facts and as law[.]" *Id*. at 9-10, ¶ 3. Defendant cites no rule of law in support of this argument, and the Court is aware of none. The lack of a rebuttal to the affidavits does not require dismissal of the charges against Defendant.

Defendant requests a change of venue based on his rights as a member of the Pembina Tribe. *Id*. at 10, ¶ 4. The crimes alleged in the Superseding Indictment were committed in Arizona and the witnesses and evidence are located here. Venue is proper in this Court.

Defendant requests the return of documents, currency, and a vehicle confiscated at the Port of Entry. *Id*. at 10, ¶¶ 5-7. The Government's right to retain some or all of this property depends on Defendant's guilt, which will be addressed at trial.

Defendant's request to vacate the deportation orders of Silva-Sandoval and Carrillo-Hidalgo will be denied. *Id*. at 11, ¶ 8. Defendant lacks standing to seek this relief.

Defendant asks the Court to the advise the Homeland Security Department of the Pembina Tribe's existence and "have them distribute this information to all port of entry points." *Id*. at 11, ¶ 9. The Court lacks authority to grant such relief in this criminal case.

Finally, Defendant seeks monetary damages against the Government for his allegedly illegal arrest and detention. *Id*. at 12. Damages are not available in this criminal case.

- 5 -

**IT IS ORDERED** that Defendant's motion for "summary judgment" (Dkt. #64) is **denied**.

DATED this 19th day of March, 2007.

*Daniel G. Campbell*
David G. Campbell
United States District Judge